643 A.2d 786

**PLUMSTEAD TOWNSHIP, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 9, 1994.

Decided June 3, 1994.

Terry W. Clemons, for petitioner.

David A. Lehr, Asst. Counsel, for respondent.

Stephen B. Harris, for intervenor, Miller & Son Paving, Inc.

Before DOYLE and NEWMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Plumstead Township appeals from the order of the Pennsylvania Department of Transportation (DOT) that dismissed the Township's exception to DOT's final report granting Miller & Son Paving, Inc. (Miller) a highway occupancy permit. We affirm.

On April 24, 1990, DOT issued highway occupancy permit No. 06006660 (first permit) to Miller for a low-volume driveway to serve Miller's proposed quarry, bituminous concrete plant and ready-mix concrete facility located in the Township. The proposed driveway is located on Point Pleasant Pike, west of its intersection with Pennsylvania Route 413 (intersection).

There were two conditions attached to the first permit: 1) that the radius of the intersection of Route 413 and Point Pleasant Pike (southwest side) must be improved to accommodate the truck turning movement; and 2) that a traffic signal must be installed at the same intersection.

On May 23, 1990, the Township appealed DOT's issuance of the first permit. Hearing Officer Spencer A. Manthorpe recommended rescinding the permit insofar as the construction of the driveway deviated from DOT's regulation applicable to low-volume driveways. DOT's rescission of the first permit made no reference to the conditions originally attached to the permit.

In 1990, independent of Miller's efforts to secure a highway occupancy permit, the Township applied for a permit to construct a traffic signal at the intersection. DOT issued the traffic signal permit to the Township. The Township then designed and installed the traffic signal. After the Township had obtained the traffic signal permit, Miller offered to design and install the enlarged radius required by the first permit at its sole cost and expense. The Township rejected this offer.

After DOT rescinded the first permit, Miller redesigned the driveway to meet DOT's regulations for low-volume driveways and requested a second highway occupancy permit (second permit). On April 18, 1992, DOT issued the second permit, No. 06011094 to Miller for its driveway. Again, two conditions were attached to the permit which were almost identical to those attached to the first. Miller, however, informed DOT that the traffic signal required by one of the conditions had already been installed by the Township. DOT issued supplemental highway occupancy permit No. 30854 to Miller which amended the second permit by deleting the traffic signal

condition. Thus, the only remaining condition to the second permit was the southwest turning radius to be enlarged to accommodate trucks turning at the intersection.

The Township appealed the issuance of the second permit. On October 21, 1991, Hearing Officer Manthorpe conducted a second hearing at which time the transcript of the original hearing on the first permit was admitted into evidence in its entirety. Hearing Officer Manthorpe also accepted additional evidence at that time. The parties agreed that the design of the proposed driveway met all DOT regulations and that the only issue before Hearing Officer Manthorpe was the one remaining condition on the second permit, i.e., enlargement of the southwest radius of the intersection.

Engineer Nelson Shaffer testified at the first hearing, the transcript of which was introduced at the second hearing, to the effect that a sufficient right-of-way existed at the intersection to construct a turning radius which would permit trucks to turn right from eastbound Point Pleasant Pike to southbound Route 413 without encroaching on the on-coming lane. Shaffer also testified that neither a left-turn lane from northbound Route 413 onto westbound Point Pleasant Pike nor a right-turn lane from eastbound Point Pleasant Pike onto southbound Route 413 were necessary for the intersection to operate safely.

At the second hearing, Shaffer further testified to the results of a traffic count he conducted three days before the second hearing when the traffic signal was operational. The results of the count show that there was no significant change in traffic volume at the intersection from 1988, when the original traffic counts were taken to 1991. Shaffer also testified that the results of the 1991 count demonstrated that the growth projected factor of 3% per year, utilized by Miller to account for future traffic growth in designing the driveway, anticipated additional traffic growth. Following this hearing the hearing officer issued a proposed report affirming the issuance of the second permit. The Township filed exceptions to the proposed report which were denied by the Secretary of Transportation, thus making the proposed report final.

■ On appeal to this Court,[1] the Township argues that: 1) that DOT's findings that Miller's improvements were adequate for the intersection are not supported by substantial evidence;[2] and 2) that the issuance of the second permit was premature and void.

■ The Township first argues that the issuance of the second permit should not have relied on testimony elicited at the first hearing because the traffic count prepared in 1988 was outdated. The Township cites to various parts of the record wherein it believes the testimony supports requiring Miller to provide for additional improvements to the intersection.

■ When the court reviews the validity of an agency's interpretation of its own regulation, that interpretation controls unless erroneous or inconsistent with the regulation, or inconsistent with the statute under which the agency promulgated the regulation. *Popple v. Commonwealth*, 133 Pa.Commonwealth Ct. 375, 575 A.2d 973 (1990). A review of both the applicable statute and regulation in conjunction with the evidence before DOT demonstrates that DOT's issuance of the second permit was a reasonable exercise of its regulatory power under the statute. *Id.*

DOT derives its regulatory authority under Section 420(a) of the State Highway Law,[3] which states, in pertinent part:

[T]he secretary is empowered to make reasonable rules and regulations governing the use of all State highways, and, by the placement of official traffic control devices, or curbs,

1. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

2. Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Kviatkovsky v. Commonwealth*, 152 Pa.Commonwealth Ct. 291, 618 A.2d 1209, 1211 (1992).

3. Act of December 13, 1979, P.L. 531, *as amended*, 36 P.S. § 670–420(a).

medians or other physical barriers, may control the flow of traffic thereon.

Furthermore, Section 420(b), 36 P.S. § 670–420(b), provides the secretary with the authority to issue permits for the opening of driveways onto State highways subject to terms and conditions provided in DOT's regulations.

The applicable regulation is found at 67 Pa.Code § 441.6(4)(i), which states, in pertinent part:

(4) *Permittee Responsibilities.* Permittee responsibility shall be as follows: (i) the permittee shall pay all fees, costs, and expenses incident to or arising from the project, including the cost of related highway improvements which increase traffic ... may necessitate.

Because the Township had already installed a traffic signal the only condition remaining was the improvement to the intersection. The Township, however, maintains that the proposed expansion of the turning radius is inadequate. However, notwithstanding the Township's assertions, we cannot hold that DOT lacked substantial evidence to issue Miller's second permit. The hearing officer, as fact-finder, "determines credibility of witnesses including experts, and that fact that he chooses to believe one over the other does not make his finding capricious or demonstrate that he deliberately ignored evidence." *Nardo v. Commonwealth,* 123 Pa.Commonwealth Ct. 41, 44, 552 A.2d 718, 719 (1988). We have carefully reviewed the record, especially the testimony of engineer Shaffer, and hold that DOT's findings are supported by substantial evidence.[4]

■ The Township also argues that Miller violated a "condition" for the issuance of the second permit, generally, and thus, the permit is void. In support of this argument, the Township cites to a letter written on October 21, 1988, by

---

4. The Township argues that *Popple* requires DOT to make off-site improvements a condition to issuing the permit and thus it erred when only requiring expansion of the intersection. Miller does not dispute the requirement of off-site improvement and, in fact, complied with the specifications for the driveway.

Stephen P. Lester, P.E., DOT's district engineer for District 6–0 which states, in relevant part:

> Another important change in policy is that our Permits Office will be requiring municipal approval of developments involving subdivisions before applications for access to State highways will be accepted.

(373a). The Township asserts that since Miller has received no such approval from the Township that Miller's application for a highway permit is premature.

First, the letter is not a regulation which binds DOT. Second, Miller is not seeking subdivision approval from the Township but rather has filed an application for curative amendment, asserting that the Township's zoning ordinance is unconstitutional because it excludes quarries. Thus, no subdivision approval is forthcoming from the Township which Miller must wait for before applying to DOT under any new policy established by Mr. Lester's letter.

■ The Township's final argument is that DOT has issued a permit which will expire many years before Miller's quarry will be built. Thus, the Township claims that DOT has abused its discretion in issuing a premature permit. We do not agree.

Miller has the right to apply for a permit as part of its overall development plan whenever it chooses. Miller has a myriad of permits which it must obtain before it opens the proposed quarry. Nothing prevents Miller from pursuing all of its numerous state and local approvals simultaneously as the appeal process on the permits may take considerable time. Therefore, we hold that DOT did not err in issuing the second permit to Miller.

Accordingly, we affirm.

### ORDER

AND NOW, this 3rd day of June, 1994, the order of the Department of Transportation in the above-captioned matter is hereby affirmed.